# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CATHERINE SMOKOVICH,

        *Plaintiff,*

v.                                        Civ. No. 17-1191 WJ/GBW

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        *Defendant.*


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Disability Insurance Benefits ("DIB"). *Doc. 17.* For the reasons explained below, I recommend denying Plaintiff's motion and affirming the judgment of the SSA.

### I.    PROCEDURAL HISTORY

On September 12, 2012, Plaintiff filed an application for a period of disability and for DIB under Title II of the Social Security Act, alleging disability beginning April 26, 2011. Administrative Record ("AR") at 203. Plaintiff alleged that she had a disability resulting from radiculopathy, disc protrusions, hip pain, back injuries, arthritis, bursitis, migraines, fibromyalgia, cervicalgia, insomnia and depression. *Id.* at 246. The claim was initially denied on February 4, 2013 and denied again upon reconsideration on July

1, 2013.  *Id.* at 126-30, 134-37.  An Administrative Law Judge ("ALJ") held a hearing on November 29, 2016.  *Id.* at 62-94.

On December 23, 2016, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled from her alleged onset date of April 26, 2011 through the date of the ALJ's decision.  *Id*. at 51-52.  Plaintiff appealed the denial of her application to the Appeals Council, which declined review on October 6, 2017, thus making the ALJ's decision the final decision of the Commissioner.  *Id.* at 1-3.  Plaintiff filed suit in this Court on December 4, 2017, seeking judicial review of the ALJ's decision.  *Doc. 1.*

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*, 933 F.3d at 800 (internal quotations omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to

discussing the evidence supporting his decision, the ALJ must also discuss the

uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent

conclusions from the evidence does not prevent [the] findings from being supported by

substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal

quotations omitted).

## III.   PARTIES' POSITIONS

Plaintiff asserts that (1) the ALJ erred by failing to meaningfully explain his

rationale for holding that Plaintiff's musculoskeletal impairments do not satisfy the

criteria of Listing 1.04, (2) the ALJ made improper credibility findings, (3) the Appeals

Council erred by failing to consider new evidence, and (4) the ALJ failed to properly

analyze whether Plaintiff's job as a health care educator constitutes past relevant work.

*See doc. 17* at 16-24. Defendant argues that there was no reversible error, because (1) the

ALJ reasonably determined that the Plaintiff's impairments did not meet or equal the

requirements for a per se disabling listed impairment, (2) the ALJ performed a proper

credibility analysis, (3) the Appeals Council's denial of Plaintiff's request for review is

not reversible error, and (4) the ALJ's past relevant work determination is supported by

substantial evidence. *See doc. 19* at 9-21. Ultimately, I recommend that the Court find

that the ALJ did not commit reversible error, and thereby affirm the final decision of the

Commissioner.

## IV.    ALJ EVALUATION

### A.  Legal Standard

For purposes of Social Security Disability Insurance benefits, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.  If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."  *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence."  20 C.F.R.

4

§ 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62, 1982 WL 31386, at *3 (1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

## B. The ALJ's Decision

On December 23, 2016, the ALJ issued a decision denying Plaintiff's application for benefits. *See* AR at 35-52. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 26, 2011. *Id.* at 37. At step two, the ALJ determined that Plaintiff, through the date last insured, had the following medically determinable impairments: degenerative disc disease of the

lumbar, osteoarthritis, diabetes, asthma, bilateral De Quervain's tenosynovitis and cubital tunnel syndrome in the right upper extremity, and obesity. *Id*. However, at step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id.* at 39-40.

At step four, the ALJ determined that Plaintiff has an RFC to perform light work, with certain limitations. AR at 40. Specifically, the ALJ determined that Plaintiff can:

> lift 20 pounds occasionally and lift and carry 10 pounds frequently. The claimant can stand and walk alternatively for 4 hours each activity and sit for 6 hours out of 8 hours per day. The claimant can reach, push and pull with upper extremities up to 8 hours per 8-hour day. The claimant can use the left hand for grasping, holding and turning objects up to 8 hours per 8-hour day. The claimant can use the right hand for grasping, holding and turning objects up to 2 hours per 8-hour day. The claimant can alternatively stoop, kneel, crouch, crawl, and balance up to 6 hours per 8-hour day. The claimant cannot ascend and/or descend ropes/ladders/scaffolds. The claimant must avoid concentrated exposures to dusts, fumes, gases, odors.

*Id*. Also, at step four, the ALJ found that Plaintiff is capable of performing past relevant work as a teacher, vocational training teacher, caseworker, health educator and social services aide. *Id.* at 49. Nevertheless, the ALJ continued to step five and found that Plaintiff could additionally perform jobs that exist in significant numbers in the national economy, including (1) furniture rental clerk (DICOT 295.357-018, 1991 WL 672589), (2) conveyor line bakery worker (DICOT 524.687-022, 1991 WL 674401), and (3) parking lot attendant (DICOT 915.473-010, 1991 WL 687865). AR at 51. Consequently, the ALJ

determined that Plaintiff was not disabled.  *Id.*

V.    ANALYSIS

A.  <u>The ALJ's Determination that Plaintiff's Musculoskeletal Impairments Do Not Satisfy the Criteria of Listing 1.04 is Supported by Substantial Evidence.</u>

In her Motion, Plaintiff contends that the ALJ erred during step three of the sequential evaluation by finding that Plaintiff's musculoskeletal impairments do not satisfy the criteria of either Listing 1.04 (A) or (C) and by failing to adequately explain his reasoning behind such a finding.  *Doc. 17* at 16-18, *doc. 20* at 1-2.  For the following reasons, I recommend that the Court find that substantial evidence supports the ALJ's finding that Plaintiff's musculoskeletal impairments do not satisfy the criteria of Listing 1.04.

"For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Here, Plaintiff's argument that her impairment matches Listing 1.04 (A) or (C) fails, because Plaintiff has not met her burden to show that her impairment simultaneously met all the specified medical criteria for Listing 1.04 (A) or (C).

In making his finding, the ALJ determined that Plaintiff's condition did not meet all of the criteria under 1.04:

I have considered the claimant's degenerative disc disease under Listing 1.04 (pertaining to disorders of the spine), but conclude that the

claimant's condition does not satisfy the severity requirements of this listed impairment. There is no medical evidence of record to demonstrate that the claimant suffers from any condition that results in compromise of a nerve root (including the cauda equine) or the spinal cord. Medical evidence of record also demonstrates that the claimant does not have the requisite neurological deficits to meet or medically equal Listing 1.04.

AR at 39. To meet Listing 1.04, which concerns disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), Plaintiff must show the presence of a compromise of a nerve root (including the cauda equina) or the spinal cord with:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or
. . . .

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.[1]

I will turn first to an analysis of the criteria required under Listing 1.04 (A).

Breaking down the criteria into manageable elements, in order to meet Listing 1.04 (A),

---

[1] I do not discuss § 1.04(B), because Plaintiff does not contend that she meets that Listing.

Plaintiff must show compromise of a nerve root (including the cauda equina) or the spinal cord with the presence of nerve root compression characterized by:

1. Neuro-anatomic distribution of pain;
2. Limitation of motion of the spine;
3. Motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and
4. If there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* The first element -- neuro-anatomic distribution of pain -- can be described as radicular nerve pain caused by nerves compromised or compressed by the herniated disc or another spinal condition. 3 Soc. Sec. Law & Prac. § 42:179; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(K)(3). Plaintiff cites to Plaintiff's subjective complaints and treatment notes dated 11/23/2011 and 9/14/2016 as evidence of Plaintiff's neuro-anatomic distribution of pain. *Doc. 20* at 1-2. Plaintiff's subjective complaints to Dr. Gurule included "[b]uttock[s] and lower extremity pain and parethesias in addition to subjective weakness" and "slightly antalgic gait with the use of a[n unprescribed] cane." AR at 343-44. However, looking to the notes from November 23, 2011, Dr. Gurule concluded, "[e]lectromyography and nerve conduction studies of the right lower extremity today were normal showing no electrical evidence of a neuropathy, radiculopathy, or plexopathy based on the nerves and muscles studied. I did not identify a neurological etiology for the patient's symptoms." AR at 344. Next, turning to the September 14, 2016 progress notes, Janet Smith, NP finds Plaintiff's condition to be generally

"normal[,]" or "unremarkable," and again cites to nothing other than Plaintiff's subjective reports in support of Plaintiff's neuro-anatomic distribution of pain. AR at 1024-27.

Therefore, the only evidence in the record that supports the first criterion is Plaintiff's subjective complaints, and such complaints were found unreliable and inconsistent with the overall record by the ALJ, as I thoroughly discuss in part B. AR at 48. Even accepting these complaints as face value, the record is devoid of any evidence that the pain was caused by nerves compromised or compressed by the herniated disc or another spinal condition. See 3 Soc. Sec. Law & Prac. § 42:179; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(K)(3). As a result, Plaintiff failed to establish that she met this criterion under Listing 1.04 (A). Consequently, because Plaintiff must meet all the criteria simultaneously, the ALJ did not err in finding that Plaintiff's impairment did not meet Listing 1.04 (A).

I now turn to an analysis of the criteria required under Listing 1.04 (C). Breaking down the criteria into manageable elements, in order to meet Listing 1.04 (C), Plaintiff must show compromise of a nerve root (including the cauda equina) or the spinal cord with:

1. Lumbar spinal stenosis resulting in pseudoclaudication, established by
   a. findings on appropriate medically acceptable imaging
   b. manifested by chronic nonradicular pain and weakness, and

    c.   resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

While the record includes objective evidence of stenosis, Plaintiff does not "satisfy the strict requirements of this Listing, which also requires manifestation of stenosis in the form of chronic nonradicular pain and weakness that results in an inability to ambulate effectively." *Doc. 19* at 13. Particularly, the ALJ notes that the Plaintiff's own complaints of "chronic nonradicular pain," which the ALJ found unreliable, were not confirmed by objective medical testing. AR at 48-49. In addition, although Plaintiff contends that use of a cane demonstrates her inability to ambulate effectively, no provider prescribed or determined the cane occasionally used by Plaintiff to be medically necessary. *Id*; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b) (defining inability to ambulate effectively as "an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device"); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(J)(4) ("The medical basis for the use of any assistive device. . . should be documented."). Further, the ALJ refers repeatedly to evidence of Plaintiff's tendency to seek unnecessary treatment, testing, and prescriptions, such as use of a nebulizer, myriad assessments that returned normal or negative, and her requests for heavier narcotics in the face of

provider opposition, suggesting that he did not believe Plaintiff's use of a cane reflected an actual need for an assistive device.  AR at 46-47.  Even if one could come to a different conclusion than the ALJ, the ALJ's finding that Plaintiff did not meet the criteria required under Listing 1.04 (C) is adequately explained and supported by substantial evidence.

Therefore, based on the foregoing, I recommend that the Court find that the ALJ properly determined that Plaintiff's conditions did not meet or medically equal a listing.

### B.  <u>The ALJ Performed a Proper Credibility Analysis.</u>

After thorough consideration of the evidence, the ALJ held that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and the other evidence in the record for the reasons explained in this decision."  AR at 48.  Plaintiff argues that the ALJ's credibility analysis is erroneous and justifies remand.  *Doc. 17* at 18-21.  Credibility determinations are within the province of the ALJ, and the Court should generally defer to the ALJ's credibility determinations.  *See Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  However, deference is not an absolute rule.  *Id*.  Rather, the ALJ's opinion must contain "specific reasons" for his credibility findings that are "closely and affirmatively linked" to evidence in the record and "not just a conclusion in the guise of findings."  *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (internal citations omitted).  Moreover,

credibility determinations must be supported by substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

The Tenth Circuit Court of Appeals has explained, however, that *Kepler* does not "reduce[] credibility evaluations to formulaic expressions" and it "'does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'" *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). When assessing a claimant's credibility concerning the severity of his impairments, the ALJ considers:

(1) The claimant's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate or aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate symptoms;
(5) Treatment, other than medication, the claimant receives or has received for his symptoms;
(6) Any measures other than treatment the claimant uses or has used to alleviate his symptoms;
(7) Any other factors concerning the individual's functional limitations and restrictions due to his symptoms.

20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p, at *3. In *Kepler*, the Tenth Circuit Court of Appeals outlined three factors that the ALJ should consider in evaluating subjective allegations of pain in particular. These factors include: "1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a

loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling." *White*, 287 at 909 n.3 (citing *Kepler*, 68 F.3d at 390).

Turning to the relevant arguments here, Plaintiff first contends that the ALJ's determination that Plaintiff's subjective reporting was inconsistent with her treatment relies on the ALJ's mischaracterization of Plaintiff's treatment as routine and conservative. *Doc. 17* at 18-19. Particularly, Plaintiff postulates that Plaintiff's treatment regime could not possibly be characterized as "routine and conservative" because Plaintiff's treatment includes "two surgeries,[2] multiple injections, multiple epidurals, constant pain medication, TENS Unit, acupuncture and chiropractic care." *Id.* at 19. However, substantial evidence supports the ALJ's questioning of Plaintiff's credibility and characterization of Plaintiff's treatment as routine and conservative. Notably, the ALJ cited doctors' notes that repeatedly denied Plaintiff's requests for further opiates, opined that no aggressive treatment of Plaintiff's symptoms was necessary, recommended conservative treatment, suggested reductions in her prescription dosages, and reported that Plaintiff's drug tests revealed Plaintiff had not taken the medications that she claimed to have taken. AR at 42-48.

---

[2] The ALJ notes that Plaintiff's back surgeries were performed in 1994 and 2006, years before Plaintiff's April 26, 2011 onset date. AR at 41, 80-81.

Similarly, Plaintiff argues that the ALJ's characterization of the evidence is erroneous, because Plaintiff requires aggressive treatment as demonstrated by the fact that "Plaintiff has been subjected to no fewer than sixteen (16) x-rays, MRIs, CT Scans, and Nerve Conduction studies[.]" *Doc. 17* at 19. However, the ALJ noted throughout his credibility analysis that Plaintiff's tests, conducted in response to allegations of intense pain, returned with findings of "unremarkable," normal or mild conditions. AR at 42-48. I agree that "[w]hat this testing actually showed is that Plaintiff's providers attempted to confirm her reports of pain with objective medical evidence time and time again and were unable to do so, which resulted in recommendations for only conservative treatment of her alleged pain symptoms." *Doc. 19* at 16. Therefore, the Court should find that substantial evidence supports the ALJ's characterization of the evidence.

Second, Plaintiff argues that the ALJ erred when conducting his credibility analysis by failing to consider Plaintiff's work history, which Plaintiff contends confirms that she is not a malingerer. *Doc. 17* at 19-20. I do not agree that Plaintiff's work history is dispositive on this issue. Moreover, I am skeptical that the ALJ failed to consider Plaintiff's work history during his analysis, especially since he thoroughly discusses her work history later in his opinion, AR at 50, and the ALJ's failure to explicitly mention this factor in a formulaic manner during his credibility analysis does not constitute reversible error. *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009)

("The ALJ is not required to discuss every piece of evidence.") (quotation and citation omitted); *Qualls*, 206 F.3d at 1372 (a formulistic factor-by-factor analysis is not required).

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's pain in determining the credibility of her limitations, citing again Plaintiff's treatment, and contending that the ALJ improperly failed to discuss the dosages and effectiveness of Plaintiff's medication. *Doc. 17* at 20-21. However, as discussed above, the ALJ did evaluate Plaintiff's pain reporting, and supported his rejection of that reporting with substantial evidence. Further, contrary to Plaintiff's contention, the ALJ also discussed many of Plaintiff's prescriptions in detail, and considered their effectiveness and side effects throughout his credibility analysis. AR at 45-47. As a result, the ALJ properly evaluated Plaintiff's pain.

Based on the foregoing, I recommend that the Court find that the ALJ conducted a proper credibility analysis.

### C. <u>The Appeals Council's Treatment of Plaintiff's Supplemental Evidence Does Not Constitute Reversible Error.</u>

Next, Plaintiff argues that the case should be remanded because the Appeals Council did not properly consider the supplemental evidence Plaintiff submitted to it. *Doc. 17* at 21-23. In particular, Plaintiff submitted additional evidence to the Appeals Council "consisting of a medical source statement from her treating physician, Ms. Laura LeBlanc CNP [dated February 14, 2017], and records from Christus St. Vincent dated May 11, 2017 through June 29, 2017." *Id.* at 21.

A claimant is authorized to submit new and material evidence to the Appeals Council when seeking review of the ALJ's decision. 20 C.F.R. § 404.970(b). Under the applicable regulation, the Appeals Council must "consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'" *Chambers v. Barnhart*, 389 F. 3d 1139, 1142 (10th Cir. 2004) (quoting *Box v. Shalala*, 52 F. 3d 168, 171 (8th Cir. 1995)); *see also* 20 C.F.R. § 404.970(b). If the additional evidence does not meet these criteria, "it plays no further role in judicial review of the Commissioner's decision." *Chambers*, 389 F.3d at 1142. However, if it does meet these criteria, the Appeals Council must then look to determine whether the qualifying new and material evidence "require[s] a change in the outcome." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). If the Appeals Council simply does not consider evidence that is new, material, and related to the period on or before the ALJ's decision, the case should be remanded. *Chavez v. Barnhart*, 126 F. App'x 434, 437 (10th Cir. 2005) (unpublished). In its October 6, 2017 notice, the Appeals Council determined that the additional evidence submitted by Plaintiff did not relate to the relevant time period, which concluded on December 23, 2016, the date of the ALJ's decision. AR at 2. Therefore, the additional evidence was not considered.

In her Motion, Plaintiff contends that "[t]here is a reasonable probability that, had the medical source statement [of Ms. Laura LeBlanc CNP] been considered by the

Appeals Council, the outcome would have been different." *Doc.* 17 at 23; *see* AR at 18-23. Specifically, she contends that the report written by Ms. LeBlanc is material because it "clearly concerns issues that were discussed at the hearing including Plaintiff's limitations walking, sitting, and standing as well as her diagnosis with fibromyalgia. Ms. LeBlanc's medical source statement confirms other physician's findings as well as Plaintiff's testimony that she cannot sit, stand, or walk well enough to work." *Doc.* 17 at 23. Plaintiff also argues that Ms. LeBlanc's report relates to the period at issue, even though Ms. LeBlanc wrote it two months following the date of the ALJ's decision, because the fact that her reports "are dated after the ALJ's decision does not mean *ipso factor* [sic] that they cannot be chronologically pertinent." *Id.* at 22 (quoting *Chavez v. Berryhill*, 16-cv-1253 SMV (Nov. 16, 2017) (unpublished)). For the following reasons, I recommend that the Court reject Plaintiff's argument.

In 2014 and 2015, Ms. LeBlanc treated Plaintiff and wrote three reports considered by the ALJ in his opinion. AR at 676-79, 801-06, 919-29. Then, after not having treated Plaintiff for over two years, Ms. LeBlanc met with Plaintiff and compiled the report at issue on February 14, 2017. The undersigned agrees that information dated after an ALJ's decision is not *per se* barred from consideration by the Appeals Council under all circumstances merely because it was issued after the relevant date. For example, in some circumstances, reports written shortly after the relevant period may fairly characterize the plaintiff's condition during the relevant period and should be

considered.  Such may be the case, for example, when a provider who consistently provided treatment to the plaintiff writes a report summarizing findings based on recent observations leading up to the date of the ALJ's decision.

However, the report at issue does not fall within this category.  Ms. Le Blanc wrote the report two months after the ALJ's decision and over two years after Ms. Le Blanc had last treated the plaintiff.  Consequently, any opinion in the report would be based either upon (1) a review of reports she made in 2014 and 2015, or (2) observations she made on February 14, 2017 when she met with Plaintiff.  In the first case, the opinion would not qualify as "new."  *See Chambers*, 389 F. 3d at 1142.  In the second case, it would not be "relate[d] to the period on or before the date of the ALJ's decision."  *Id.*  This deficiency also applies to the records from Christus St. Vincent dated May 11, 2017 through June 29, 2017.  Therefore, the supplemental evidence did not meet the standards that would require the Appeals Council to consider it.

Moreover, even if the Appeals Council had been required to consider the supplemental evidence submitted by Plaintiff, it did so.  Specifically, the Appeals Council found that the evidence "does not affect the decision about whether you were disabled beginning on or before December 31, 2016."  AR at 2.  *See also Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006) (finding that the Appeals Council's brief statement that the additional evidence did not provide a basis for changing the outcome

of the ALJ's decision was sufficient to show that it had considered the additional evidence).

As a result, I recommend that the Court find that the Appeals Council did not err in its handling of the supplemental evidence submitted to it by Plaintiff.

### D. **The ALJ Performed Proper Step Four and Five Analyses.**

In her final argument, Plaintiff contends that the ALJ erred at steps four and five, because the jobs that the ALJ found Plaintiff able to perform are inconsistent with her RFC limitation regarding grasping, holding and turning objects in which Plaintiff can "use the left hand for…up to 8 hours per 8-hour day. . . . [and] can use the right hand for … up to 2 hours per 8-hour day."  AR at 40; *doc. 17* at 23.  Particularly, Plaintiff argues that "all the jobs discussed at steps four and five involve at least occasional handling and fingering except 'health care educator' which was identified at Step 4 as past relevant work."  *Id.* at 23-24.  She correctly states that "occasional" is defined as 1/3 of an eight-hour work day, equaling 2.6 hours.  *Doc. 17* at 24 n. 31.  Therefore, she postulates that, because Plaintiff can only grasp, hold, or turn objects with her right hand for 2 hours per 8-hour day, the ALJ erred in finding that Plaintiff could perform jobs requiring her to grasp, hold, or turn objects for 2.6 hours per day. *Id.*

However, in making this argument, Plaintiff overlooks the fact that the ALJ found that Plaintiff may grasp, hold or turn objects for 8 hours per day with her left hand.  Therefore, Plaintiff's RFC and the DOT requirement are not necessarily

inconsistent.  Further, the vocational expert ("VE") testified during the hearing that a person with Plaintiff's RFC, including her left and right handed limitations, would be able to perform the jobs that the ALJ included in his opinion at step 4 and step 5.  AR at 91-92.  Overall, it was proper for the VE to opine on the matter and for the ALJ to rely on that testimony, because "[t]he whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial and administrative notice and provide an alternative avenue of proof." *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (citing *Gay v. Sullivan*, 986 F. 2d 1336, 1340 (10th Cir. 1993)).  Additionally, the ALJ specifically asked whether the VE's testimony was consistent with the DOT listings, and the VE confirmed that it was consistent.  AR at 92.  An ALJ is permitted to rely on a VE's confirmation that her testimony is consistent with the DOT.  *See Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014) (unpublished) (no duty to resolve conflict where "the VE testified that the jobs he identified were consistent with a hypothetical person with [the claimant's] impairments and the DOT").

Finally, even if Plaintiff's RFC were inconsistent with jobs that require occasional handling and fingering, the ALJ also found at step four that Plaintiff's Health Educator job, which requires no handling or fingering, constitutes past relevant work that she may continue to perform.  AR at 50.  Plaintiff contends that this finding was erroneous, because the ALJ failed to explain how the Health Educator position, which requires specific vocation preparation ("SVP") of 8, constitutes past relevant work when Plaintiff

performed the job for less than a year. *Doc. 17* at 24. Specifically, she argues that, in order for a position to qualify as "past relevant work," the individual must have "gained sufficient experience needed for 'average performance in the job situation,'" requiring approximately four years of experience for jobs with an SVP of 8. *Id. See also doc.* 20 at 6 n. 6; SSR 82-62. Nevertheless, during her testimony, the VE testified that the Health Educator position constituted past relevant work for Plaintiff. AR at 91. Because the ALJ was entitled to rely on that testimony, the ALJ did not err in finding that the Health Educator position constituted past relevant work. As a result, I recommend that the Court find that the ALJ performed proper step four and five analyses.

## VI.    CONCLUSION

For the foregoing reasons, I recommend finding that Plaintiff has failed to

demonstrate that the ALJ committed reversible error.  Therefore, I recommend that

Plaintiff's Motion to Remand (*doc. 17*) be DENIED and the Commissioner's decision be

AFFIRMED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of
a copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must
file any objections with the Clerk of the District Court within the fourteen-day period if that
party wants to have appellate review of the proposed findings and recommended
disposition.  If no objections are filed, no appellate review will be allowed.**

---